J-S45009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIQUE NASIR ECHOLS-MCCULLOUGH | : | |
| | : | |
| | : | No. 324 MDA 2024 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0000480-2023

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                          **FILED: APRIL 23, 2025**

Appellant, Malique Nasir Echols-McCullough, appeals from the judgment of sentence entered on December 19, 2023, following his convictions for persons not to possess a firearm, carrying a firearm without a license, possession with intent to deliver a controlled substance (cocaine) (hereinafter "PWID"), and simple possession of a controlled substance (marijuana).[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.   On February 10, 2023, Officer Daniel Antoni of the West Shore Regional Police Department observed a blue Lincoln sedan with heavily tinted

---

[1]  18 Pa.C.S.A. § 6105(a)(1), 18 Pa.C.S.A. § 6106(a)(1), 35 P.S. § 780-113(a)(30), and 35 P.S. § 780-113(a)(16), respectively.  The Commonwealth also charged Appellant with resisting arrest pursuant to 18 Pa.C.S.A. § 5104, but Appellant was found not guilty of this offense at trial.

windows driving in the vicinity of Fifth and Market Streets in Lemoyne, Cumberland County, Pennsylvania. Officer Antoni pursued the vehicle over the Market Street Bridge and effectuated a traffic stop on Front Street in Harrisburg City, Dauphin County, Pennsylvania. Officer Antoni approached the vehicle and requested identification from all three occupants. Appellant was seated on the rear right passenger side of the vehicle.[2] In response to Officer Antoni's inquiry, Appellant searched for identification inside a black bag on his lap. As Appellant searched for identification, Officer Antoni observed a firearm in the bag. After observing the firearm, Officer Antoni "asked everyone in the car if anyone was on probation or parole," and Appellant "advised he was on state probation or parole" for a prior PWID conviction. N.T., 8/28/2023, at 13 and 20-21. Because Appellant could not legally possess a firearm as a felon on probation or parole, the police arrested Appellant. In a subsequent search, the police recovered a loaded "Glock 27" firearm, an extended magazine with nine rounds of ammunition, a bag of marijuana, and a digital scale from the black bag on Appellant's lap. *Id.* at 13 and 22. Police also recovered 22 grams of cocaine and several hundred dollars in U.S. currency from Appellant's pant pockets in a search of his person incident to the arrest. *Id.* at 23. The Commonwealth charged Appellant with the aforementioned charges.

---

[2] Officer Antoni identified Appellant at the suppression hearing. N.T., 8/28/2023, at 8.

On August 16, 2023, Appellant filed an omnibus pretrial motion to suppress the evidence recovered by the police. Following a suppression hearing on August 28, 2023, the trial court denied suppression and immediately proceeded to trial wherein a jury convicted Appellant of the narcotics and firearm offenses as set forth above. On November 1, 2023, Appellant filed a motion for judgment of acquittal, and brief in support, challenging the constitutionality of the firearm statutes under which he was convicted in light of the United States Supreme Court's examination of the Second Amendment in **New York State Rifle & Pistol Association, Inc., v. Bruen**, 597 U.S. 1 (2022). On December 18, 2023, the trial court sentenced Appellant to an aggregate sentence of five to 10 years of imprisonment.[3] After a hearing on Appellant's motion for judgment of acquittal, the trial court denied relief by order entered on December 19, 2023. Appellant filed a timely post-trial motion on December 29, 2023. On February 7, 2024, the trial court denied relief. This timely appeal resulted.[4]

_____

[3] More specifically, the trial court sentenced Appellant to five to ten years of incarceration for persons not to possess a firearm, a concurrent term of three to six years' incarceration for PWID (cocaine), and a concurrent term of three-and-one-half to seven years of incarceration for carrying a firearm without a license. For simple possession of marijuana, the trial court sentenced Appellant to pay the costs of prosecution. **See** NT., 12/18/2023, at 5-6.

[4] Appellant filed a timely notice of appeal on March 5, 2024. He filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on March 26, 2024. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 24, 2024.

On appeal, Appellant presents the following issues[5] for our review:

1. Did the [trial] court err[] in denying [Appellant's] omnibus pretrial motion to suppress physical evidence?

2. Did the [trial] court err[] in denying [Appellant's] motion for judgment of acquittal[?]

3. Was there sufficient evidence to prove beyond a reasonable doubt that [Appellant] was guilty of possession of with intent to deliver [(PWID)] (cocaine)?

4. Was there sufficient evidence to prove beyond a reasonable doubt that [Appellant] was guilty of either persons not to possess a firearm or [carrying a firearm] without a license?

Appellant's Brief at 11.

In his first issue, Appellant presents several reasons to suggest that the trial court erred in failing to suppress physical evidence recovered during the February 10, 2023 search. *Id.* at 18-22. First, Appellant argues that Officer Antoni lacked jurisdiction to conduct the traffic stop in Dauphin County when the officer first saw the vehicle in Cumberland County before crossing over the Market Bridge. *Id.* at 18-20. More specifically, Appellant posits that there were no safety issues precluding Officer Antoni from effectuating the traffic stop "five blocks before the bridge" and that Officer Antoni "testified that he was *not* actively pursuing the vehicle and did not turn on his [emergency] lights until he was in Dauphin County." *Id.* at 19 (emphasis in original). Instead, Appellant maintains that Officer Antoni admitted that he "was actively looking for any criminal activity[.]" *Id.* at 20. Next, Appellant argues that

_____

[5] We have reordered Appellant's issues for ease of discussion.

Officer Antoni's "request to provide proof of identity after he verbally gave his name … was an intrusion to [Appellant's] right to privacy." *Id.* at 21. Finally, Appellant suggests that "[a]sking [him] questions about his parole status and criminal history [wer]e part of an illegal detention and a violation of [his] right to remain silent" pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at 22. For all of these reasons, Appellant argues that suppression of the recovered evidence was warranted.

> Our standard of review is as follows:

> [T]he standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

> This Court has observed:

> For a [traffic] stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. [*Commonwealth v.*] *Feczko*, 10 A.3d [1285,] 1291 [(Pa. Super. 2010) (*en banc*) ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation."). Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code

violation, even if it is a minor offense. ***Commonwealth v. Chase***, 960 A.2d 108 (Pa. 2008).

\* \* \*

[Further,] we note that our United States Supreme Court has held that any violation of the Motor Vehicle Code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime. ***See Whren v. U.S.***, 517 U.S. 806, 812–813 (1996) (establishing a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime); ***Chase***, ***supra*** (indicating that if the police can articulate the necessary quantum of cause a constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary).

***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa. Super. 2017).

Under the Motor Vehicle Code "[s]un screening and other materials [are] prohibited." ***See*** 75 Pa.C.S.A. § 4524(e). More specifically, "[n]o person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). Further, this Court has held that "to possess probable cause that a vehicle is in violation of [S]ection 4524(e)(1), an officer must only observe that the tint on the vehicle's windows is so dark that it prohibits the officer from seeing inside the car." ***Commonwealth v. Prizzia***, 260 A.3d 263, 270 (Pa. Super. 2021) (citation omitted). In this case, Officer Antoni testified that he stopped the vehicle in question because the two front windows

- 6 -

were darkly tinted and he could not see inside the car.[6]  N.T., 8/28/2023 at 8 and 15.  As such, the police had probable cause to effectuate a traffic stop.

Moreover, Section 8953 of the Municipal Police Jurisdiction Act (MPJA) provides, in pertinent part:

> a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> * * *
>
> (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S.A. § 8953(a)(2).  "Under [Section 8953(a)(2)], if a police officer possesses probable cause that an offense has been committed in his or her primary jurisdiction, and is in hot and fresh pursuit of the perpetrator of the offense, the officer is vested with the same powers of law enforcement when the officer crosses out of his or her primary jurisdiction."  ***Commonwealth v. Hilliar***, 943 A.2d 984, 989 (Pa. Super. 2008).  "This Court has clarified

---

[6]  Officer Antoni testified that because it was dark outside and the car had window tint, when he approached on foot following the traffic stop, he used a flashlight to see inside the vehicle. N.T., 8/28/2023, at 10.  The windows were later tested and results indicated that the tint allowed "70 percent light transmission."  ***Id.*** at 30.

that 'hot pursuit' entails some sort of chase, though the chase need not involve a 'fender smashing Hollywood style chase scene' or be newsworthy." **Commonwealth v. Laird**, 797 A.2d 995, 998 (Pa. Super. 2002), *citing* **Commonwealth v. McPeak**, 708 A.2d 1263, 1266 (Pa. Super. 1998). We have previously determined that there was no violation of the MPJA for following a vehicle into another jurisdiction when "officers gave chase upon first seeing [a] taillight infraction, but tempered the chase to avoid a potentially hazardous traffic stop just before [a] bridge" and to be "reasonably safe." **Id.** (citation omitted). "This Court has held that the subjective question of whether an officer's actions constituted hot and fresh pursuit should not stand in the way of an otherwise valid arrest where extraterritorial pursuit is in response to a specific crime that occurred in the primary jurisdiction." **Id.** at 999 (citation omitted).

Here, Officer Antoni witnessed a violation of the Motor Vehicle Code, specifically prohibited dark window tint pursuant to Section 4524(e)(1), and had probable cause to effectuate the traffic stop. Officer Antoni, however, testified that he witnessed the violation in Cumberland County, but waited to effectuate the traffic stop in Dauphin County, "due to safety issues of pulling a vehicle over on [the] Market Street Bridge" because there was "no side berm to pull a vehicle over." N.T., 8/28/2023, at 17. The trial court determined that "[t]he evidence of record establishe[d] that the Lincoln's driver was observed in suspected violation of the Motor Vehicle Code in Lemoyne, within the primary jurisdiction of" Officer Antoni, who "followed [the vehicle in which

- 8 -

Appellant traveled] continuously toward and across the Market Street Bridge and then onto Front Street" and that the "delay in effectuating the [traffic] stop was motivated principally by safety concerns[.]" Trial Court Opinion, 4/24/2024, at 6 (record citations omitted). Moreover, the trial court rejected Appellant's suggestion that Officer Antoni was not in pursuit of the vehicle based upon his testimony at the suppression hearing, noting that Officer Antoni "was not using [] legal term[s] but [was] merely explaining that the Lincoln had not fled." *Id.* at 7 (record citations omitted). Based upon our review of the certified record and applicable law, we discern no abuse of discretion in denying suppression based upon the jurisdiction of the police under the MPJA. In this case, the police gave chase upon first seeing the window tint infraction, but properly tempered the chase to avoid a potentially hazardous traffic stop and to be reasonably safe. As such, Appellant is not entitled to relief on his claim that police lacked jurisdiction to stop the vehicle at issue in another county.

We next consider Appellant's claim that Officer Antoni's post-stop commands and inquiries constituted unlawful intrusions into Appellant's privacy. In *Commonwealth v. Rodriguez*, 313 A.3d 201 (Pa. Super. 2024)

(non-precedential decision),[7] *appeal denied*, 325 A.3d 445 (Pa. 2024), our

Court recently determined:

> During a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. [I]f there is a legitimate stop for a traffic violation ... additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.
>
> In the context of a traffic stop, the United States Supreme Court held that the duration of police inquiries is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns. A stop becomes unlawful when it lasts longer than is necessary to complete its mission, the rationale being that the authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. The Supreme Court elaborated that the critical question is not whether the inquiry occurs before or after the officer issues a ticket, but whether it prolongs—, *i.e.*, adds time to—the stop.
>
> [In ***Rodriguez***], the officers initiated a legitimate traffic stop based on vehicle code violations relating to heavy window tint on a vehicle that was not registered. Upon approaching the car and using a flashlight to determine whether there were additional occupants in the car, a firearm was observed in plain view. […H]aving observed a firearm in plain view at the beginning of an investigative detention, and the additional suspicion that arose before the stop's initial purpose was fulfilled, the officers were permitted to investigate the new suspicions related to the firearm.
>
> As this Court [has further] recognized[:]
>
>> The usual traffic stop constitutes an investigative rather than a custodial detention, unless, under the totality of the circumstances, the conditions and duration of the detention

---

[7] ***See*** Pa.R.A.P. 126(b)(2) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

become the functional equivalent of arrest. Since an ordinary traffic stop is typically brief in duration and occurs in public view, such a stop is not custodial for **Miranda** purposes.

[This Court] explained [that a]n ordinary traffic stop becomes custodial when the stop involves coercive conditions, including, but not limited to, the suspect being forced into a patrol car and transported from the scene or being physically restrained.

Based on the totality of the circumstances [in **Rodriguez**], we [held] the traffic stop [did not] involve[] coercive conditions so as to become custodial in nature.

At the time Rodriguez was briefly questioned in a public area about being on probation/parole and having a gun license/permit, he was not in custody and therefore not entitled to warnings before even being asked to step out of his car.

**Rodriguez**, 313 A.3d 201, at *2-3.

Moreover, "police can require both the driver and the passengers in a lawfully stopped vehicle to identify themselves regardless of whether there is reasonable suspicion that the passengers are engaged in criminal activity." **Commonwealth v. Bumbarger**, 231 A.3d 10, 17–18 (Pa. Super. 2020), citing **Commonwealth v. Campbell**, 862 A.2d 659, 664-665 (Pa. Super. 2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. Interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"). Such inquiries do not ordinarily call for **Miranda** warnings or trigger other Fourth Amendment protections because "[a]sking a passenger for identification is reasonable; a person's name, like his voice or handwriting, is revealed in a variety of daily

- 11 -

interactions and there is no legitimate expectation of privacy associated with one's identity."). *Id.*

Based upon the totality of circumstances and applicable law, the trial court's denial of suppression was proper. First, as set forth above, the police had probable cause to execute a valid traffic stop. Thereafter, it was reasonable and legally permissible for the police to request that Appellant provide proof of identity as a passenger in a lawfully stopped vehicle. Moreover, this was an ordinary traffic stop, brief in duration and occurring in public view; hence, it did not involve coercive conditions. As such, the traffic stop was not custodial in nature and *Miranda* warnings were unwarranted before the police briefly questioned everyone in the vehicle about their probation/parole status. Since Officer Antoni observed a firearm in Appellant's possession, and learned shortly thereafter through permissible means that Appellant was on state parole for a prior PWID conviction, Officer Antoni had probable cause to effectuate an arrest for persons not to possess firearms. For all of the foregoing reasons, Appellant is not entitled to relief on his first appellate issue.

Next, Appellant contends that the trial court erred in dismissing his motion for judgment of acquittal wherein he challenged the constitutionality of the firearms statutes under which he was convicted, 18 Pa.C.S.A. §§ 6105 and 6106, in light of the United States Supreme Court's 2022 decision in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 597 U.S. 1 (2022). Appellant's Brief at 23-33. Appellant argues that *Bruen* "changed the face of

Second Amendment jurisprudence." *See id.* at 23 and 27. More specifically, Appellant argues that Sections 6105 and 6106 should be declared unconstitutional since those provisions proscribe his possession of a firearm, conduct that falls squarely within the text of the Second Amendment. *See id.* at 26 ("possession of a handgun as alleged in the information clearly qualifies as keeping and bearing arms"). Appellant reads the Second Amendment as extending the right to bear arms to "all citizens," regardless of prior criminal convictions. *Id.* at 29.

"When a defendant challenges the constitutionality of a criminal statute, he raises a pure question of law for which our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Collins*, 286 A.3d 767, 775 (Pa. Super. 2022) (citation omitted). "As the party challenging the constitutionality of Section 6105, [an appellant] carries the high burden of demonstrating Section 6105 clearly, palpably and plainly violates the Second Amendment of the Constitution of the United States." *Commonwealth v. McIntyre*, -- A.3d --, 2025 WL 750585, at *5 (Pa. Super. 2025).

Our cases confirm that Appellant is not entitled to relief on his second claim. Recently, this Court determined that "[s]tatutes that require a person to obtain a license to carry a firearm [] do not violate the Second Amendment where the statute does not require the applicant to show any special need and requires the government to issue the license unless the applicant fails a background check." *Commonwealth v. Mead*, 326 A.3d 1006, 1015 (Pa. Super. 2024), *citing* *Bruen*, 597 U.S. at 79-80 (*Bruen* "does not prohibit

States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the [*Bruen*] decision does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 States. … Those shall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements."). We have also observed that "*Bruen* does not stand for the principle that convicted violent offenders … are 'the people' who have a right to possess arms under the Second Amendment. *Bruen* in no way said that felons are protected under the Second Amendment, nor can its decision, with its hyper focus on 'law-abiding' citizens, be read as providing the necessary support for such a determination. Instead, *Bruen* … did not in any way call into doubt the government's ability to prohibit felons from possessing firearms." *See McIntyre*, 2025 WL 750585, at *8. Accordingly, Appellant is not entitled to relief regarding his challenge to the constitutionality of Sections 6105 and 6106.

In his third issue, Appellant argues that "the Commonwealth failed to show that [Appellant] either delivered any drugs or that he had the intent to do so" to support his conviction for PWID. Appellant's Brief at 22. He claims that although there was evidence that Appellant possessed a digital scale and cocaine, "the Commonwealth's expert admitted that it is possible that a drug user could carry a scale or purchase larger amounts of drugs." *Id.* Appellant further posits there was "no additional supporting evidence such as phone

communications of sales, large sums of money, [and/or] packaging materials" or "owe sheets" in Appellant's possession and that Appellant "testified repeatedly, and credibly, that he was an addict and did not deliver drugs." *Id.* at 23.

Initially, we note that although Appellant characterizes this issue pertaining to his PWID conviction as a challenge to the sufficiency of the evidence, Appellant actually challenges the weight given to the evidence presented. Appellant properly preserved this issue in his post-sentence motion. On appeal, however, Appellant does not cite legal authority regarding the weight of the evidence and fails to cite to the certified record in support of his appellate claim, and for this reason we find Appellant's third appellate issue waived. *See* Pa.R.A.P. 2119(b)-(c) (requiring citation to legal authority and specific reference to the record in appellate briefs); *see Commonwealth v. Hunzer*, 868 A.2d 498, 516 (Pa. Super. 2005) (an appellant waives a claim where he failed to cite any legal authority in support of an argument in his appellate brief); *see also Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (appellant waived challenge to weight of the evidence where appellant's brief conflated weight and sufficiency claims and did not otherwise develop weight claim). Further, as set forth below, assuming *arguendo* that Appellant's weight claim was not waived, it is also without merit.

We have previously determined:

Our standard of review in addressing weight of the evidence claims is whether the trial court has exercised an abuse of discretion by overriding or misapplying the law or rendering a

judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is or is not against the weight of the evidence. Accordingly, for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Williamson*, 330 A.3d 407, 419 (Pa. Super. 2025)

(internal citations and quotations omitted).

Here, in ruling on Appellant's weight claim, the trial court recognized:

[Appellant] was found to be in possession of a digital scale, several hundred dollars in cash, and more than twenty-two grams of crack cocaine – *i.e.*, more than twenty-two times the quantity typically purchased for personal consumption [according] to the expert testimony [presented at trial. This was] more than sufficient to support the jury's finding that delivery was intended. Similarly, with respect to the weight of the evidence presented to demonstrate that intent, while [Appellant] emphasizes that certain items [] generally indicative of an intent to deliver (*e.g.* "owe sheets") were absent from the roadside stop, none of these are the *conditio sine que* of drug dealing, and their absence in no way undermine[d] the other evidence to the extent that it shocks the conscience.

Trial Court Opinion, 4/24/2024, at 4.

Upon our review of the record and applicable law, we agree with the trial court's conclusion that the verdict did not shock the conscience of the court so as to warrant relief on Appellant's weight claim. The Commonwealth

- 16 -

presented evidence that Appellant possessed a substantial quantity of narcotics, a digital scale, and hundreds of dollars in cash that were not indicative of personal drug use. The jury was free to believe all, part, or none of the evidence to determine the credibility of the witnesses' testimony. Further, Appellant has not established that the trial court abused its discretion in refusing to order a new trial because the evidence was so shockingly tenuous, vague, and/or uncertain. As such, based upon the facts of record, we discern no trial court error or abuse of discretion in rejecting Appellant's weight claim pertaining to PWID.

Finally, as set forth above, Appellant posits that there was insufficient evidence to support his firearm convictions under Sections 6105 and 6106. Appellant's Brief at 11. However, upon further review, although Appellant lists the issue in his statement of questions presented, there is no corresponding argument section in his appellate brief and no citations to legal authority or the certified record. *See* Pa.R.A.P. 2119(a)-(c) (requiring separate arguments for each question argued, citation to legal authority, and specific reference to the record in appellate briefs). Appellant does not even cite the firearm statutes at issue and fails to specify which elements of the offenses were allegedly unproven. *See Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009) ("undeveloped sufficiency challenge" and failure to "specify the allegedly unproven elements" of an offense … is deemed waived."). Instead, Appellant merely suggests, in boilerplate fashion, that "there would have been no sufficient evidence to prove beyond a reasonable doubt that

[Appellant] was guilty of either persons not to possess a firearm nor [carrying a firearm] without a license but for [the] constitutional violation" as argued in his second issue. Appellant's Brief at 33. Having already determined that there was no constitutional violation and for all of Appellant's appellate deficiencies, Appellant has waived his challenge to the sufficiency of the evidence to support his firearm convictions.[8]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/23/2025

---

[8] We would otherwise find Appellant's firearm sufficiency claims without merit. Upon cursory review, Appellant stipulated at trial that he had a prior felony conviction that made him ineligible to possess a firearm under 18 Pa.C.S.A. § 6105(b) and, therefore, also "did not have the ability to carry a firearm without a license" under 18 Pa.C.S.A. § 6106. N.T., 8/28/2023, at 143. Moreover, the trial court rejected Appellant's prior contention, which he now abandons on appeal, "that the presence of a pistol in a bag on his lap, a bag through which he was apparently rifling for his own identification, which he apparently found therein, [was insufficient] to demonstrate that he actually possessed the firearm." Trial Court Opinion, 4/24/2024, at 5. We discern no error.

- 18 -